[Cite as *State v. Thompson*, 2011-Ohio-1739.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO             :

                               :         Appellate Case No. 23935

        Plaintiff-Appellee         :

                               :         Trial Court Case No. 2010-TRD-385

v.                                  :

                               :

ELISE THOMPSON         :      (Criminal Appeal from Dayton

                               :        Municipal Court)

        Defendant-Appellant         :

                               :

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of April, 2011.

. . . . . . . . . . .

JOHN DANISH, Atty. Reg. #0046639, and STEPHANIE COOK, Atty. Reg. #0067101, by
SHAUNA HILL, Atty. Reg. #0074569, City of Dayton Prosecutor's Office, 335 West Third
Street, Room 372, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

WILMER J. DECHANT, JR., Atty. Reg. #0085084, 257 Regency Ridge Drive, Centerville,
Ohio 45459
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Elise Thompson appeals from her conviction and sentence following a bench

trial on one count of wrongful entrustment, a first-degree misdemeanor.

**{¶ 2}** In two related assignments of error, Thompson challenges the legal sufficiency and manifest weight of the evidence to support her conviction.

**{¶ 3}** The State's sole witness at trial was Dayton police officer Ashley Bozarth. She testified that she was sitting in a marked police car in a gas station parking lot when a van pulled in and stopped at a gas pump. According to Bozarth, she saw a male, later identified as Antwon Blevins, drive the van up to the gas pump. After the van stopped, Bozarth saw Thompson, a passenger in the van, switch places with Blevins and occupy the driver's seat. A third person exited the van and went into the gas station. After that person returned to the van, Bozarth watched Thompson pull out of the parking lot and fail to stop at a crosswalk.

**{¶ 4}** Before initiating contact with the van's occupants, Bozarth ran a computer search of its license plate and discovered that it was registered to Thompson. The search also revealed that police previously had warned Thompson for allowing a person named Andre Faircloth to drive her van while under a license suspension. Based on the physical description of Faircloth that she received, Bozarth suspected that he was the male who had driven the van into the parking lot.

**{¶ 5}** Bozarth then pulled the van over to cite Thompson for failing to stop at the crosswalk. After approaching the van, she discovered that the male who had driven into the parking lot actually was Antwon Blevins, who also had a suspended driver's license. As a result, Bozarth cited Thompson for wrongful entrustment but did not issue a citation for the crosswalk violation.

**{¶ 6}** On direct examination, the following exchange occurred between the prosecutor and Bozarth:

{¶ 7}   Q: "OK. Do you know if – or did you speak with the owner of the vehicle, which is the defendant, regarding the driver that you initially observed?"

{¶ 8}   A: "Correct. When I issued her the citation for wrongful entrustment I told her that she's been told that before not to allow Mr. Faircloth or unlicensed drivers to drive her vehicle. If she knew he [Blevins] didn't have a license why would she let him and she advised me that her bell palsy was hurting her and that's why she had him drive."

{¶ 9}   Q: "And did she – did you learn from the defendant what her relationship was with Mr. Blevins?"

{¶ 10}  A: "Yeah she said it was her brother I believe."

{¶ 11}  Q: "And at any point did she indicate that she was aware that Mr. Blevins did not have a valid driver's license?"

{¶ 12}  A: "I told her you know he doesn't have a license. Why are you letting him drive? She said because my bell palsy was hurting." (Trial transcript at 11).

{¶ 13} After the State rested, Blevins and Thompson testified as defense witnesses. They both denied that Blevins had driven the van into the gas station parking lot. They insisted that Bozarth was mistaken and that Thompson had been the only driver. The trial court concluded otherwise and found Thompson guilty.  It imposed a suspended thirty-day jail sentence and one year of unsupervised probation. It also suspended Thompson's driver's license for six months, ordered her van to be impounded for thirty days, and ordered her to pay a $50 fine plus court costs. This appeal followed.[1]

---

[1] By their own terms, the probationary period, the driver's license suspension, and the impoundment have expired. A review of the trial court's docket reveals, however, that Thompson has not yet paid her fine or court costs. Therefore, her appeal is not moot. Cf. *State v. Golston,* 71 Ohio St.3d 224, 226, *1994-Ohio-109,* citing *State v. Wilson* (1975), 41 Ohio St.2d 236, and *State v. Berndt* (1987), 29 Ohio St.3d 3

{¶ 14} As set forth above, Thompson contends her conviction is based on legally insufficient evidence and is against the weight of the evidence. Although she raises those issues separately, her argument under both assignments of error is the same: she claims the State failed to prove that she knew Blevins lacked the legal ability to drive  or that she was reckless in that regard.

{¶ 15} When a defendant challenges the sufficiency of the evidence, he or she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 16} Our analysis is somewhat different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest

---

("[W]here a criminal defendant, convicted of a *misdemeanor,* voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction.").

miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387 (citations omitted). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 17} Having reviewed the record, we conclude that Thompson's conviction is based on legally sufficient evidence and is not against the weight of the evidence. Thompson was cited for violating R.C. 4511.203, which provides in part:

{¶ 18} "(A) No person shall permit a motor vehicle owned by the person or under the person's control to be driven by another if any of the following apply:

{¶ 19} "(1) The offender knows or has reasonable cause to believe that the other person does not have a valid driver's or commercial driver's license or permit or valid nonresident driving privileges.

{¶ 20} "(2) The offender knows or has reasonable cause to believe that the other person's driver's or commercial driver's license or permit or nonresident operating privileges have been suspended or canceled under Chapter 4510. or any other provision of the Revised Code."

{¶ 21} The citation Thompson received did not specify which subsection of R.C. 4511.203 she was accused of violating. Exhibits introduced at trial, however, show that Blevins' license initially had been suspended and then expired after he failed to reinstate it. For present purposes, this distinction is academic. Thompson raises no argument regarding whether Blevins' license was suspended or expired at the time in question. On appeal, she

concedes that he was not authorized to drive. As set forth above, she argues only that the State failed to prove the requisite mental state, namely that she "knew or had reasonable cause to believe" he lacked driving privileges.

**{¶ 22}** Thompson contends the only evidence regarding her awareness of Blevins' driving status is the testimony of officer Bozarth quoted above. Bozarth's testimony reveals that police previously had warned Thompson not to allow a person named Andre Faircloth to drive her vehicle because he was unlicensed. The fact that Thompson knew *Faircloth* was unlicensed plainly does nothing to establish her knowledge that *Blevins*, the driver in this case, was unlicensed. But Bozarth's testimony did not stop there.

**{¶ 23}** When asked whether she had spoken to Thompson about allowing Blevins to drive her van, Bozarth responded affirmatively and explained: "When I issued her the citation for wrongful entrustment I told her that she's been told that before not to allow Mr. Faircloth or unlicensed drivers to drive her vehicle. *If she knew he [Blevins] didn't have a license why would she let him and she advised me that her bell palsy was hurting her and that's why she had him drive.*" Bozarth then added: "*I told her you know he doesn't have a license. Why are you letting him drive?* She said because my bell palsy was hurting." (Emphasis added).

**{¶ 24}** The crux of Thompson's appeal concerns whether the trial court reasonably could have inferred from the foregoing testimony that Thompson knew Blevins was unlicensed. Thompson insists that such an inference is not reasonable. According to Thompson, her response about bell palsy explained *why* she had allowed Blevins to drive but did not constitute an admission that she *knew* he was unlicensed.

**{¶ 25}** Upon review, we find Thompson's argument to be unpersuasive. The trial court

reasonably could have inferred from Bozarth's testimony that Thompson implicitly had admitted knowing Blevins' license status. When Bozarth first asked Thompson why she had let Blevins drive if she knew he lacked a license, Thompson did not deny having such knowledge. She responded only that she had allowed him to drive because her bell palsy was hurting.

{¶ 26} It is well settled that "[a]n accused person may incriminate himself, not only by his direct statements but also by declarations or conduct by which he impliedly admits the truth of charges made against him. Thus, silence in the face of an accusation of crime may constitute conduct or circumstances from which his admission of guilt may be inferred. When a statement tending to involve one in the commission of a crime is made in his presence and hearing and such statement is not denied, contradicted or objected to by him, both the statement and the fact of his failure to deny it are admissible against him as evidence of his acquiescence in its truth. His conduct constitutes what is known as a tacit or silent or adoptive admission." *State v. Brown* (June 9, 1987), Columbiana App. No. 85-C-42; see, also, *State v. Gibson*, Greene App. No. 09-CA-05, 2010-Ohio-1121, ¶15-16.

{¶ 27} As set forth above, Bozarth asked Thompson why she had allowed Blevins to drive if she knew he lacked a license. This suggestion that Thompson knew Blevins was unlicensed tended to implicate her in the commission of a crime. Because she heard the statement, Thompson reasonably could have been expected to deny it if it were untrue. She did not. Instead, she acquiesced in the truth of the assertion that she knew Blevins was unlicensed and proceeded to explain why she had allowed him to drive. Under these circumstances, the trial court was entitled to infer that Thompson implicitly had admitted knowing Blevins was unlicensed. We note, too, that the trial court reasonably could have inferred a consciousness of

guilt from the fact that Thompson quickly replaced Blevins as the driver after the van pulled into the parking lot near the police car.

{¶ 28} In reaching the foregoing conclusion, we recognize that a defendant's *post-arrest* silence in the face of incriminating accusations cannot be used to establish an adoptive admission. "[P]ost-arrest silence is not a reliable indication of an adoptive admission because an arrestee may simply be exercising the right to remain silent after being given *Miranda* warnings." *State v. Comstock* (Aug. 29, 1997), Ashtabula App. No. 96-A-0058, citing *Doyle v. Ohio* (1976), 426 U.S. 610. The present case, however, does not involve an issue of post-arrest silence following *Miranda* warnings. There were no *Miranda* warnings, and there was no arrest. After her discussion with Thompson, officer Bozarth merely issued a traffic citation.

{¶ 29} Having reviewed the record, we believe a rational trier of fact could have found Thompson guilty of wrongful entrustment, and the evidence does not weigh heavily against her conviction. Accordingly, we overrule the two assignments of error and affirm the judgment of the Dayton Municipal Court.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

John Danish
Stephanie Cook
Shauna Hill
Wilmer J. Dechant, Jr.
Hon. Christopher D. Roberts